UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| TIMMY LYNN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | No.: 2:15-0003 |
|  | ) | Judge Sharp |
| BETH DAVIS, DONNIE ALLRED, and | ) |  |
| GARY L/N/U, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM

This litigation arose after Plaintiff Timmy Lynn was allegedly mistreated while housed at detention facilities in Overton County and Smith County, Tennessee. Pending before the Court are Motions for Summary Judgment filed by Defendants Beth Davis (Docket No. 53), Gary Beaty (Docket No. 61) and Donnie Allred (Docket No. 64).

On June 15, 2016, the Court heard oral arguments on the motions in Cookeville, Tennessee. At the hearing, the Court observed that Plaintiff originally proceeded *pro se*, but that counsel had entered an appearance on his behalf on May 5, 2016. Nevertheless, counsel did not supplement Plaintiff's responses to the Motions for Summary Judgment, submit an affidavit from Plaintiff based on personal know setting forth Plaintiff's version of the facts, request an extension of time within which to do either of those things, or move to continue the hearing. In fact, counsel stated that he was prepared to go forward with the hearing and argued that each of Plaintiff's claims was meritorious, even though he conceded that he had only reviewed about one-half of the record.

At the hearing, counsel acknowledged that there were problems with Plaintiff's *pro se* filings

1

and the limited evidentiary record, but insisted that any problems could be cured:

> Nothing that is wrong with this case at this point, your Honor, is fatal in this case. Mr. Lynn prosecuted this case from the confines of [the] Robertson County Jail from January 2015, until May of this year. There are problems here that can be corrected and none of them are fatal[.]

(Hrg. Trans. Rough Draft at 29) (hereinafter "Tr."). Counsel did not explain how this was so, given that the discovery deadline has passed,[1] the time for serving parties has expired, and the summary judgment record is closed. Since the hearing, counsel has made no further filings on Plaintiff's behalf, nor sought leave to make any such filings.

Against this backdrop, the Court turns to the pending Motions for Summary Judgment.

**I. Motion for Summary Judgment Filed by Beth Davis (Docket No. 53)**

On September 26, 2013, Plaintiff was arrested in Clay County, Tennessee on charges of rape, and transferred to the Smith County Jail on December 25, 2013, to await trial. On January 17, 2014, Jonathan Woods was booked into the Smith County Jail on a number of charges including theft, aggravated assault, assault, and vandalism. Plaintiff and Woods later became cellmates.

On January 23, 2014, Woods submitted two separate inmate request forms concerning his desire to be transferred to the Putnam County Jail to serve his time. In the first, Wood indicated that he was concerned because, during a previous incarceration, he had problems with the staff at the

---

[1] Pursuant to the Scheduling Order, discovery and any motions relating to discovery were to be filed by September 18, 2015. As such, Plaintiff's *pro se* Motion to Compel Discovery (Docket No. 112) filed February 5, 2016, is untimely. Moreover, defense counsel, as an officer of the Court, has represented that the items Plaintiff's sought to compel (1) had previously been provided; (2) do not exist, *i.e.*, a video of the September 3, 2014 incident and a statement from Correctional Officer Jenkins about that incident; or (3) are not in the possession of the Defendants, *i.e.* grievances and request from the Robertson County jails because none of the Defendants work at that facility. Plaintiff has offered nothing to support his conclusory assertions that Defendants withheld evidence. Therefore, Plaintiff's Motion to Compel will be denied, and Defendant's Motion for a Protective Order (Docket No. 116) seeking protection from the requested discovery will be denied as moot.

old Smith County Jail. In the second, he voiced similar concerns, but also claimed that he needed medical attention and medicine.

With regard to Wood's concerns about the staff at the old Smith County Jail, Davis, the Jail Administrator, responded that there should not be any problems because no officers working in the new jail worked at the old jail. Without citation to the record, Plaintiff contends that this was false because Lt. Glover worked at both facilities, and Woods told Plaintiff that he had a problem with Lt. Glover, as well as two other officers who were employed at the new jail.

On January 25, 2014, Woods submitted another inmate request form in which he stated that he had spoken with his mother concerning his safety in the jail and that he was nervous about it. He also voiced concerns about his mental health. Davis responded that if Wood had concerns about his mental health, he would need to see the nurse.

On January 27, 2014, Plaintiff passed a note to Corrections Officer James Edwards concerning his cellmate. The note read:

> Not sure what's up with my cellmate but he has been talking and acting all crazy and stuff. He was downstairs then he got moved up here with me! I'm not sure if he got into it with his cell-mate down stairs or what? He has talked about rushing over through the door to D-Pod when he gets a chance and get the guy that set him up on the streets or something. Been talking and asking about why I have no paper work about my charges if I'm not a sex-offender for he's been to prison and facing time again plus talking about not being on his med's and stuff Celexan and Thorazine and other plus talking about when he was in the old jail he spit on and knocked down Lt. Glover and others! He has already argued with a couple others' in here so? He been hollering and arguing about being a Cryp with others and other non-sense but? It's only a matter of time I'm guessing.

(Docket No. 58-5 at 2, scrivener's errors in original).

Also on January 27, 2014, Plaintiff passed Sgt. Matthew a note. In that note, Plaintiff wrote:

> Is there anyway for for me to get the new young guy that came in tonight for a celly and mine take his place down-stairs for my celly snoors a lot also and always loud,

3

> rude and etc. And it would be great for some peace and quiet in here and or up here? Plus dudes surely cleaner. My celly nasty and has hair everywhere literally; floors', bunks', sink toilet and all. If not tonight then maybe by shift-change in the morning of have day shift do it? Please and thank you! I just do not want anymore trouble or fighting or anything, I'm in enough already[.]

(Docket No. 101-1 at 1, scrivener's errors in original).

Shortly after lunch on January 28, 2014, a fight broke out between Plaintiff and Woods. The fight was reported by Plaintiff more than an hour later when he requested medical treatment for his alleged injuries. Plaintiff was taken to the Cookeville Regional Medical Center with injuries to his face. Numerous test, including CT scans of Plaintiff's head and spine revealed no acute injuries. He was discharged that same day and returned to the jail.

Based on the foregoing, Plaintiff sues Defendant Davis in her individual and official capacities under 42 U.S.C. § 1983 for the alleged deprivation of his constitutional rights. Davis raises a number of grounds for dismissal, including frivolity under the Prison Litigation Reform Act ("PLRA"), improper service of the official capacity claim, failure to exhaust administrative remedies,[2] failure to state a claim, and the lack of anything other than *de minimus* injury. The Court finds it unnecessary to address the majority of those arguments because Plaintiff has failed to show genuine issues of material fact that preclude Defendant Davis from being entitled to judgment as a matter of law.

Preliminarily, the Court notes that Plaintiff was in the Smith County Jail awaiting trial and, as a pretrial detainee, he was protected by the Due Process Clause of the Fourteenth Amendment.

---

[2] As will be discussed in more detail below, exhaustion of administrative remedies under the PLRA is mandatory. In response to Davis' motion, Plaintiff seems to suggest that he did exhaust his remedies on this particular claim, and points out that Davis failed to submit the grievances he filed. In reply, Davis attached a log of grievances, some of which were filed shortly after the fight, but the substance of the underlying grievances is unclear. It is Defendant's burden to show failure to exhaust administrative remedies. Lee v. Wiley, 789 F.3d 673, 680 (6th Cir. 2015).

4

However, the Sixth Circuit has made clear "that, under the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates,'" and, therefore, "precedents governing prisoners' Eighth Amendment rights also govern the Fourteenth Amendment rights of pretrial detainees." Ruiz-Bueno v. Scott, 2016 WL 385294, at *4 (6th Cir. Feb. 2, 2016) (quoting Thompson v. Cnty. of Medina, 29 F.3d 238, 242 (6th Cir.1994)).

As an inmate, pretrial or otherwise, Plaintiff was entitled to "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "To establish a constitutional violation based on failure to protect, a prison inmate first must show that the failure to protect from risk of harm is objectively 'sufficiently serious.'" Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011) (quoting Farmer, 511 U.S. at 834. Next, "plaintiff also must show that prison officials acted with 'deliberate indifference' to inmate health or safety." Id.

Deliberate indifference is demonstrated if a defendant "knows of and disregards an excessive risk to inmate health or safety," which requires that she "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Farmer, 511 U.S. at 837. "Critical to th[is] subjective inquiry is the requirement of specific evidence that each individual defendant acted with deliberate indifference." Ruiz-Bueno, 2016 WL 385294, at *4 (citing Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005)). "Because government officials do not readily admit the subjective component of this test, it may be 'demonstrat[ed] in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Baynes v. Cleland, 799 F.3d 600, 618 (6th Cir. 2015).

Plaintiff's effort to create a jury question on deliberate indifference by Davis falls short. He

5

notes that Wood's booking record shows him to be a Crip, while his own shows no gang affiliation. He then argues that many states, including Tennessee require that suspected gang members be segregated from the rest of the inmate population, citing Policy No. 404.10 of the Tennessee Department of Corrections as support. However, that policy applies to administrative segregation and states that it "may be utilized in instances when the Warden determines an inmate's presence in the general population poses a serious threat to the security/safety of the institution, staff, or other inmates and the community." Tenn. Dep't of Corrs., Policy 404.10 (2010), www.tn.gov/assets/entities/correction/attachments/404-10.pdf (last viewed July 23, 2016). The policy does not require that gang members be segregated and, in any event, applies to state institutions, not county jails. Prison administrators are "accorded wide–ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," Bell v. Wolfish, 411 U.S. 520, 547 (1979), and the Eighth Amendment on its face does not mandate specific housing assignments in the absence of a known risk. See Mayoral v. Sheahan, 245 F.3d 934, 938 (7th Cir. 2001) (stating that "the number of gang members housed by the [Chicago Department of Corrections] and the high representation of certain gangs would place an unmanageable burden on prison administrators" and querying whether administrators were "required to separate inmates by gangs. Would the jail be required to have a tier for Gangster Disciples, a tier for Latin Kings, *etc*.?").

Plaintiff also argues that Davis knew Woods was mentally ill because she replied to one of Woods' notes by stating that he would need to see a nurse about his mental health concerns. Plaintiff cites Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3rd Cir. 1979) for the proposition that "seriously mentally ill prisoners have a right to adequate treatment[.]" (Docket

6

No. 91 at 3). The Court does not quarrel with that legal proposition, but the evidence is bereft of evidence that Woods had serious mental problems and, more importantly, that Davis was aware of the extent of any problems Woods may have had. Moreover, the record does not disclose that Woods was ever deprived of appropriate mental health treatment in a timely fashion. Regardless, Woods is not charging deliberate indifference, Plaintiff is, and he has not shown that even he perceived himself to be in danger from Woods. See Gevas v. McLaughlin, 798 F.3d 475, 480-81 (7th Cir. 2015) (citation omitted) (collecting cases) ("In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.' . . . Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger.").

The two notes that Plaintiff gave to jailers were not directed to Davis, the Jail Administrator, and the law is well settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Assuming for the sake of argument that she read them in the day between when they were written and when the fight took place, those notes show at most that Woods' anger was directed at the "guy who set him up" and Lt. Glover. While Plaintiff was perturbed by Woods' possible sleep apnea and personal hygiene habits, there is no suggestion that Plaintiff was afraid of him. In fact, in the second note Plaintiff indicated that a cell change the following day would work.

At oral argument, counsel essentially conceded that the notes did not suggest imminent harm to Plaintiff. He pointed out, however, that Plaintiff is a small man, standing 5'3" tall and weighing

7

140 pounds,[3] and claimed the notes were Plaintiff's cautionary way of apprising jailers that something more was amiss "in the only way he knew how." (Tr. 10) . However, there is absolutely nothing in the record to support the notion that Plaintiff was hinting at something more sinister, or that he couched concerns cryptically. And there is nothing to suggests that the corrections officers on the pod – least of all Davis – reached such conclusions. Summary judgment will be granted in Davis's favor.

**II. Motion for Summary Judgment Filed by Gary Beaty (Docket No. 61)**

On May 14, 2014, Plaintiff was transferred to the Overton County Detention facility. On August 2, 2014, Plaintiff and Allen Gee, another inmate, got into a fight. How that occurred is the subject of some debate.

Defendant claims that, on the day of the fight, Plaintiff Lynn was assisting Correctional Officer Beaty in collecting the laundry from the top level of a pod. In the process of doing so, Beaty opened Gee's cell door so that his cellmate could get a mop bucket. Although Beaty subsequently closed the cell door, Gee managed to get out of his cell after Beaty left the pod.

Gee saw Plaintiff walk downstairs to the common room. Gee then came out of his cell and looked down over the railing. Gee threw something at Plaintiff, which resulted in the two arguing. Gee then walked downstairs and Plaintiff removed his shirt. Gee twice struck Plaintiff in the head, wrestled him to the ground, and continued to hit him. The inmates were then separated, but Lynn continued speaking to Gee and made a gesture for Gee to come back downstairs. Plaintiff then started up the stairs, as two officers attempted to stop him. Plaintiff continued his pursuit by running

---

[3] While counsel repeatedly referenced Plaintiff's diminutive statute, and this is something that is borne out by the booking records, those same records also show that Woods was but 3 inches taller and 5 pounds heavier than Plaintiff. This hardly suggested that a fisticuffs between David and Goliath was in the offing.

8

up the stairs, even after being pepper sprayed. This prompted Gee to exit his cell and push and kick Plaintiff. Gee then complied with orders to return to his cell.

As a result of the fracas, Plaintiff was seen by the jail nurse. According to her, Plaintiff had a small, superficial cut on his lip, and a skin tear on his left palm.

For his part, Plaintiff contends that he was not helping Beaty with laundry. Rather, he was speaking with Beaty about the possibility of being let outside for recreation with two other inmates. Plaintiff also claims that Beaty opened the door, not to allow Gee's cellmate to get a mop bucket, but to dump a mop bucket of water. Plaintiff also claim that he was downstairs before Beaty left the pod.

As for the fight itself, Plaintiff agrees Gee first struck him in the head, arguing that this shows Gee was the aggressor. He claims, however, that both he and Gee continued arguing, that corrections officers did not intervene after the first skirmish, and that Gee went back upstairs on his own volition. But he concedes that he gestured for Gee to come back downstairs, started up the stairs even after the officers tried to stop him, and ran at Gee after being pepper sprayed.

Beaty did not file his own declaration in support of his Statement of Undisputed Material Facts, nor did Plaintiff file a declaration supporting his denial of those facts. Nevertheless, the disputed facts are not material, and it is irrelevant whether (1) Plaintiff was helping with laundry or merely speaking to Beaty; (2) Gee's cellmate sought to retrieve a mop bucket or to dump a bucket of water; (3) officers tried to stop the fight after the initial salvo or let it continue; and (4) Gee went upstairs based on orders or his own choice are irrelevant given the limited nature of Plaintiff's claim.

In his Amended Complaint, Plaintiff alleges that he "was allowed to be assaulted due to the direct negligence" of Defendant Beaty. (Docket No. 13 at 2). In his sur-reply brief, he reiterates

9

that "defendant Beaty's negligence and disregard for policies and procedures is the true reason for and of said incident." (Docket No. 113 at 2). More specifically, Plaintiff alleges that Beaty was negligent because he should not have opened Gee's cell door in the first place since Gee was in administrative segregation, and Plaintiff and two other inmates – all accused of sex crimes – were out on the pod.

Plaintiff's negligence claim fails. State law claims against a governmental entity or its employees are governed by the Tennessee Governmental Tort Liability Act ("TGTLA"). Tenn. Code Ann. § 29–20–102(1). That Act "waives the immunity of state entities from suit and permits litigants to sue 'for injury proximately caused by a negligent act or omission of any employee within the scope of his employment.'" Partee v. City of Memphis, 449 F. App'x 444, 447 (6th Cir. 2011) (quoting, Tenn. Code Ann. § 29-20-205). However, the TGTLA also provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner." Tenn. Code Ann. § 29–20–310(b). Because the TGTLA has removed the immunity of Overton County from damages for negligence, Plaintiff cannot sue Beaty for negligence. See Hill v. City of Germantown, 31 S.W.3d 234, 240 (Tenn. 2000) ("Pursuant to Tenn. Code Ann. § 29-20-310(b), judgment may not be entered against Officer Cunningham because the City's 'immunity from suit' was removed pursuant to Tenn. Code Ann. § 29-20-205") Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000) ("Even where governmental immunity is removed by statute, governmental employees are generally immune from individual liability.").

Plaintiff assertion in his Amended Complaint that he "wishes to sue" Defendant Beaty in his

10

"individual capacity . . . [a]long with his official capacity" does not save his negligence claim. A suit against a city or county official in his or her official capacity is treated as an action against the city or county itself. Laubis v. Witt, 597 F. App'x 827, 832 (6th Cir. 2015); Shamaeizadeh v. Cunigan, 338 F.3d 535, 556 (6th Cir. 2003). "Service of a defendant sued in his official capacity must be made under Fed. R. Civ. P. 4(j)." Humes v. City of Blue Ash, 2013 WL 5934429, at *2 (S.D. Ohio Oct. 31, 2013) (collecting cases); Hays v. Wharton, 2014 WL 726831, at *2 (Feb. 24, 2014) ("Rule 4 of the Federal Rules of Civil Procedure has different requirements for serving summons on an individual and on a governmental entity. Both sets of requirements are in force in this case because plaintiff has sued Director Godwin in his individual and official capacity"). This is in keeping with the principle that a defendant must be properly served with a summons before the Court can exercise personal jurisdiction over that defendant. Omni Capital Int'l Ltd. v. Rudolph Wolff & Co., 484 U.S. 97, 104 (1987).

Under the Federal Rules of Civil Procedure, "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Tennessee law, service on a county is achieved "by delivering a copy of the summons and of the complaint to the chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated; if not, by delivering the copies to the county court clerk." Tenn. R. Civ. P. 4.04(7).

Here, Plaintiff did not effectuate service on Overton County. Rather, he only served Beaty at the Fentress County Jail where Beaty apparently now works. Plaintiff's assertion that "does not

know the Rules of Civil Procedure" and that there was no harm because "Defendant responded to all motions," (Docket No. 92 at 6) does not excuse Plaintiff's failure. "[T]he requirement of proper service of process 'is not some mindless technicality'" Friedman v. Estate of Presser, 929 F.2d 1151, 1156 (6th Cir. 1991) (citation omitted), and "[a]ctual knowledge of a lawsuit does not substitute for proper service under Fed. R. Civ. P. 4," Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 623 (6th Cir. 2004).

The lack of service of process aside, Plaintiff hoists himself by his own petard in regard to his negligence claim against Overton County by asserting in both his reply and sur-reply briefs that he has, in fact, stated a claims for deliberate indifference. This is because, while the "TGTLA removes immunity for 'injury proximately caused by a negligent act or omission of any employee within the scope of his employment,'" it "provides a list of exceptions to this removal of immunity," including "[i]njuries that arise[ ] out of . . . civil rights[.]'" Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010) (quoting Tenn. Code Ann. § 29-20-205). "TGTLA's 'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." Id. (collecting cases). "The majority of courts to address the TGTLA's civil-rights exception have done so by asking whether a plaintiff's claims 'are in essence claims for violation of [the plaintiff's] constitutional rights.'" Savage v. City of Memphis, 620 F. App'x 425, 429 (6th Cir. 2015) (citation omitted).

Here, Plaintiff's negligence and deliberate indifference claims arise from the same circumstances and are based on the same facts. As such, a claim for negligence against Overton County is barred by the TGTLA. See Bryant v. City of Memphis, 2016 WL 683241, at *2 (6th Cir. Feb. 19, 2016) ("Because Bryant's negligent-training claim arises out of the same facts underlying

his § 1983 claim, the City enjoys immunity from suit" pursuant to the TGTLA); Dillingham v. Millsaps, 809 F. Supp. 2d 820, 852 (E.D. Tenn. 2011) (barring claim pursuant to the TGTLA because "Plaintiffs' negligence claim against Monroe County is nothing more than [their] civil rights claim: it is still based upon an underlying claim of 'excessive force'"); Okolo v. Metro. Gov't of Nashville, 892 F. Supp. 2d 931, 947 (M.D. Tenn. 2012) ("Plaintiff's state-law claims against Metro arise out of the same circumstances giving rise to his § 1983 civil rights claims under the Fourth Amendment. Therefore, they are barred by TGTLA's retention of municipal immunity for injuries arising from civil rights.").

Even though Defendant argues that the deliberate indifference claims was not properly pled, the Court considers it because Plaintiff filed a form "Complaint for Violation of Civil Rights Filed Pursuant To 42 U.S.C. § 1983" at a time when he was proceeding *pro se*, his Amended Complaint (also filed *pro se*) contains allegations about constitutional deprivations, and *pro se* complaints, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers[.]'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Even so, summary judgment in favor of Defendant Beaty is warranted.

In both his Amended Complaint and his reply briefs, Plaintiff properly characterized Beaty's action in letting Gee out and/or failing to re-secure door constituted negligence. That is all the evidence before the Court supports, even when all the facts and the inferences to be drawn therefrom are to be construed in Plaintiff's favor as they must be on summary judgment. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citation omitted) ("'On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"). This is fatal to Plaintiff's deliberate indifference

13

claim.

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Farmer, 511 U.S. at 836. The Sixth Circuit has explained:

> Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the detainee's] health and safety. This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments.

Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001) (quoting Farmer, 511 U.S. at 837)).

Plaintiff has presented nothing from which this Court or a jury could conclude that Beaty knew that Gee posed a substantial risk to Plaintiff and intentionally disregarded that risk. In his Amended Complaint, Plaintiff writes:

> Several weeks prior to th[e] altercation another inmate with the last name of Gee had made several threatening remarks about the physical harm he would do to the plaintiff if he were allowed to gain access to him. This was the same floor on which c/o Gary was the routine roves. He was aware of threats such as, but not limited to, death that were made from inmate Gee towards the plaintiff.

(Docket No. 14 at 3). Although the Amended Complaint was subscribed to under the penalty of perjury and "carries the same weight as would an affidavit for the purposes of summary judgment," El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008), Plaintiff's assertions about Beaty's alleged knowledge are nothing but conclusory. Plaintiff suggests that because Beaty worked on the same floor where Gee was housed, Beaty should have known about the alleged threats. This is insufficient to meet the deliberate indifference standard. See, Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005) ("[I]t is insufficient for Garretson to show 'a question of fact

14

whether the police officers . . . should have known' that she was at risk."); Lewis v. McClennan, 7 F. App'x 373, 375 (6th Cir. 2001) (holding that the plaintiff's allegations that the sheriff and jailer should have known that placing the plaintiff in a jail with a large population of white inmates put him at risk for attack failed to show deliberate indifference). Indeed, "[i]n adopting th[e] test for deliberate-indifference claims, the Supreme Court [in Farmer] specifically rejected an objective standard of knowledge (*i.e.*, constructive knowledge)" for failure-to-protect claims. Castro v. Cty. of Los Angeles, 797 F.3d 654, 674 (9th Cir. 2015).

At the hearing, Plaintiff's counsel argued that there had been a "prior incident" between Plaintiff Gee, that there had "been trouble between the two," that Plaintiff is "very small," and that Gee "is a street fighter," all of which created a "recipe for trouble." (Tr. at 18). The problem with this argument is that, apart from Plaintiff's diminutive stature, the record does not establish the other ingredients in the recipe, and more importantly that Beaty knew there was supposedly bad blood between Gee and Plaintiff. Summary judgment in Beaty's favor will be granted.

### III. Motion for Summary Judgment Filed by Donnie Allred (Docket No. 64)

The third and final Motion for Summary Judgment involves an incident that occurred at the Overton County jail on September 3, 2014, when Plaintiff was pepper sprayed by Sgt. Donnie Alfred. This potentially presents a much closer question on the merits than the other two claims brought by Plaintiff.

In appropriate circumstances, jailers can pepper spray belligerent and non-compliant prisoners, which Plaintiff admits that he was. Passmore v. Ianello, 528 F. App'x 144, 147 (3rd Cir. 2013); Jones v. Shields, 207 F.3d 491 (8th Cir. 2000); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984). However, and even though the focus of the arguments at the hearing in this case was on on

15

whether the use of pepper spray was warranted, Plaintiff's claim against Defendant Allred is broader than that. In his Amended Complaint, which is verified, Plaintiff claims that, not only was he pepper sprayed while handcuffed, Defendant Allred hit him in the head, knocked him to the ground, and continued the beating. At oral argument, defense counsel suggested that Plaintiff waived any claim alleging a beating by not specifically addressing it in his response brief, and that, in any event, various assertions made by Plaintiff show clear credibility issues. The Court does not wander into this thicket because Plaintiff has failed to exhaust his administrative remedies.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, Woodford v. Ngo, 548 U.S. 81, 85 (2006), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," Porter v. Nussle, 534 U.S. 516, 532 (2002).

To properly exhaust his administrative remedies, "a prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, . . . [as] defined not by the PLRA, but by the prison grievance process itself.'" Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015) (citations omitted). With regard to analyzing whether a particular claim has been exhausted, the Sixth Circuit has explained:

> Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. . . . . A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." . . . When a prisoner makes affirmative efforts to comply but does not succeed, we analyze "whether those 'efforts to exhaust were sufficient under the circumstances.'" . . .

16

Id.

Plaintiff admittedly did not file a grievance about his altercation with Defendant Allred, but claims this was because "he was in a suicide cell where he had no access to the kiosk or writing material of any kind[.]" This assertion, however, is unsupported by an affidavit, declaration, or other evidence and "[b]ald assertions are insufficient to create a genuine issue of material fact." Tangwall v. Jablonski, 111 F. App'x 365, 368 (6th Cir. 2004). Rather, "[t]o make out a genuine issue of material fact, plaintiff must present significant probative evidence tending to support h[is] version of the facts, evidence on which a reasonable jury could return a verdict for h[im]." Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009). Plaintiff has not done so with respect to his unadorned assertion that he simply could not file a grievance after the incident on September 3, 2014 – he does not even claim that he tried to do so, but was thwarted. In contrast, Allred has submitted a declaration from Erin Bullard, the Jail Administrator, in which she avers that, after the incident, Plaintiff "was moved to cell 407 in booking which is commonly called the suicide cell"; inmates in that cell do not have access to the kiosks for the filing of grievances, but can file paper grievances; and that, had Plaintiff asked "he would have been given a paper grievance to do so." (Docket No. 106, Bullard Decl. ¶¶ 4-6).[4]

---

[4] The Court notes that this declaration was filed with Allred's reply, after Plaintiff filed his response brief that raised the issue for the first time. Plaintiff could have filed a further response, just as he did to the reply briefs filed by Beaty and Davis. Further, when counsel entered the case, he could have sought leave to support this critical contention with some sort of evidence. No effort has been made to submit admissible evidence that would rebut Bullard's assertions.

The Court also notes that, in the declaration, Bullard states that Plaintiff was moved to the Robertson County jail on September 12, 2014. Based on this, Defendant argues that Plaintiff could have filed a grievance once he arrived there. While a transfer to another penal facility does not excuse the failure to exhaust, futility does, Napier, 636 F.3d at 224, and the Overton County jail's grievance policy requires that grievances be filed within five days of a grievable incident.

As already noted, "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." Napier, 636 F.3d at 223. There is no evidence that Plaintiff made that effort and, consequently, he cannot be excused for failure to exhaust. See McCarley v. Logan Cty.., 2015 WL 5105173, at *3 (W.D. Ky. Aug. 31, 2015) (plaintiff failed to exhaust administrative remedies where, like here, he "maintain[ed] only that he had no access to a pencil or pen while on suicide watch," and "fail[ed] to allege, much less prove, that he made any effort to file a grievance"); Thomas v. Denno, 2012 WL 630041, at *4 (N.D. Ohio Feb. 27, 2012) (finding failure to exhaust where "there is no evidence that a prisoner at [the county] jail in segregation or on suicide watch may not file a grievance"); see also, Herrera v. Cty. of Santa Fe, 79 F. App'x 422, 424 (10th Cir. 2003) (finding claim unexhausted, even though inmate "allege[d] that he was hospitalized for three days and later placed in segregation").

Plaintiff also suggests that he was thwarted in filing a grievance because he was denied access to the law library on July 29, 2014, August 27, 2014, and September 1, 2014. However, each of those requests preceded the pepper spray incident. The lack of access to a law library before an incident occurred is irrelevant. Besides, failure to exhaust is not excused simply because an inmate was not allowed to visit a law library when formulating a grievance. See Lindsey v. Striedel, 486 F. App'x 449, 452 (5th Cir. 2012) (rejecting inmates assertion that he "should be excused from exhaustion because he was denied access to an adequate law library" where inmate did "not set forth any specific legal materials that were withheld or articulate how a deficient law library or lack of legal resources prevented him from filing a timely grievance"); Sutherland v. Herrmann, 2010 WL 2303206, at *4 (E.D. Cal. June 7, 2010) (" [I]nmate grievance and appeals forms are relatively

18

simple documents that do not require legal research to complete.") Walker v. Seal, 2007 WL 1169364, at *3 (E.D. La. Apr. 19, 2007) (holding that "Plaintiff does not need access to the law library in order to submit a second-step grievance").

Finally, in response to Defendant Allred's's Statement of Facts which included a signed copy of the grievance procedures, Plaintiff wrote that while he "may of [sic] signed a copy, . . . he never received his copy from the jail staff." (Docket No. 66 at 2). Even if true, Plaintiff certainly knew the grievance procedure, having filed at least four grievances during his four month stay at the Overton County jail, one of which was filed just days before the altercation with Defendant Allred. (Docket No. 67-15). In any event, "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." Napier, 636 F.3d at 223, n.2 (collecting cases).

## IV. Conclusion

On the basis of the foregoing, the Motions for Summary Judgment filed by Defendants Davis, Beaty, and Allred will be granted; Plaintiff's Motion to Compel will be denied; and Defendants' Motion for Protective Order will be denied as moot. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE